# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | | |
|---|---|---|
| Evanston Insurance Company, | ) | Civil Action No. 5:12-02750-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| R & L Development Corporation, LLC, | ) | **ORDER AND OPINION** |
| Claflin University, and General Board of | ) | |
| Higher Education and Ministry, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Evanston Insurance Company ("Evanston") filed this declaratory judgment action against Defendants R & L Development Corporation, LLC ("R&L"), Claflin University ("Claflin"), and General Board of Higher Education and Ministry ("GBHEM") seeking a declaration by the court that Evanston does not have an obligation to provide coverage to R&L under commercial general liability insurance policy number CL100201331 (the "Evanston Policy"), which policy was issued by Evanston to R&L. (ECF No. 1 (referencing ECF No. 1-2).) Specifically, Evanston asks the court to declare that Claflin and GBHEM (collectively the "University Defendants"), as assignees to R&L's rights under the Evanston Policy, are not entitled to any award, judgment, or indemnification for water damage they suffered as alleged in the University Defendants' Underlying Lawsuit against R&L. (Id. at 16 (referencing ECF No. 1-1).)

This matter is before the court on cross motions for summary judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56 motion") by Evanston and the University Defendants. (ECF Nos. 28, 29.) The parties oppose each other's motions respectively. (ECF Nos. 32, 35.) For the reasons set forth below, the court **GRANTS** Evanston's Rule 56 motion and **DENIES** the Rule 56

motion of the University Defendants.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

The parties stipulated to the following facts for the adjudication of this matter (see ECF No. 24):

1.      Prior to July 10, 2007, R&L contracted with Claflin, GBHEM, and/or Claflin's regular maintenance contractor Sodexo to perform certain work in Claflin's James S. Thomas Science Building, a three story masonry building. Part of R&L's scope of work included the removal of existing metal partitions in all of the bathrooms of the building.

2.      Late in the afternoon of July 10, 2007, R&L's Ryan Moore and a man named Garrett retained by R&L to assist Mr. Moore began unscrewing the partitions and removing them from the building to a dump truck. During the removal, Garrett held each partition while Mr. Moore removed the screws that secured the partitions in place. Garrett took the partitions to the dump truck once detached from the bathroom walls.

3.      The work proceeded without incident on the first and second floor of the building, as well as in the women's bathroom on the third floor.

4.      In the men's room on the third floor, Mr. Moore opened the door of a toilet partition, unscrewed it, and handed it to Garrett. As Mr. Moore handed the partition to Garrett or as Garrett turned away with the partition door, Garrett lost control of the partition, which hit a water supply valve above a urinal on the opposite wall.

5.      The impact of the partition broke the supply valve over the urinal, and a heavy stream of water began to gush out, quickly flooding the bathroom. The water was introduced into the building by a charged piping system used to distribute the water to various outlets such as spigots, commodes, and urinals with the used water discharged through drainage pipes into the city's sewer system.

6.      As the water continued to flow, Mr. Moore looked for a shut-off valve and called Claflin's security for assistance.

7.      At this time of the evening, about 6:00 p.m., the employees of Claflin's regular maintenance contractor, Sodexo, had left for the evening.

8.      After being alerted of the water inundation by Claflin's security department, Sodexo employees returned to Claflin's campus, obtained the necessary tool to disconnect water from the exterior of the building, located the utility box containing the water cut-off, and turned the water off. Because the water system was pressurized and contained in pipes in the building, water continued to flow from the broken valve for approximately fifteen to thirty minutes.

9.      By the time the water stopped, it had flowed from the third-floor to the second and first floors, including through ceilings in some areas, and caused damage to ceiling tiles,

computers, and laboratory equipment among other things.

  10. Claflin and GBHEM filed a lawsuit against R&L in the Orangeburg Court of Common Pleas in the matter captioned <u>Claflin University and General Board of Higher Education and Ministry v. R & L Development Corporation, LLC</u>, Civil Action Number 2010-CP-38-0989 (hereinafter "Underlying Lawsuit").

  11. Evanston issued a policy of commercial general liability insurance to R&L bearing policy number CL100201331 with effective dates of June 6, 2007 to June 6, 2008 with a limit of $500,000 per occurrence and general aggregate limits of $1,000,000.00 [ ].

  12. The Evanston Policy contains an Endorsement on form MSU-043 (11/06), which states in relevant part:

**<u>CONTRACTOR LIMITATION ENDORSEMENT</u>**

  I. The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury;"

* * *

  3. Caused by, arising out of, resulting from, or in any way related to the invasion or existence of water or moisture including but not limited to mold, mildew, rot, or related deterioration of any property.

  13. Evanston provided a defense to R&L for the claims in the Underlying Lawsuit under a full reservation of its rights and filed the instant Declaratory Judgment action.

  14. The parties to the Underlying Lawsuit, with the participation of Evanston, mediated the Underlying Lawsuit on November 27, 2012. Unable to resolve the matter at mediation, the parties agreed to the following, which are stipulated hereby:

  a. R&L has confessed judgment in the amount of $207,875.93, which are the damages sought by Claflin/GBHEM, the validity of which action Evanston will not contest for the purpose of this Declaratory Judgment action.

  b. R&L has assigned its rights under the Evanston Policy to Claflin/GBHEM, the validity of which action Evanston will not contest for the purpose of this Declaratory Judgment action.

  c. Should Claflin, GBHEM, and/or R&L prevail in this Declaratory Judgment action, Evanston shall only be responsible for satisfying the judgment amount minus $2,500.00.

  d. Should Evanston prevail in the Declaratory Judgment action, no monies shall be owed to Claflin, GBHEM, or R&L.

3

  e. Should Claflin, GBHEM, and/or R&L prevail and present a claim for their attorney's fees, that claim will include a claim for reasonably related attorney's fees owed and/or paid to Matthew Rosbrugh, Esq.

  f. No terms or conditions of the settlement agreement entered into by the parties in the November 27, 2012 settlement agreement are waived by this Joint Stipulation of Facts.

(ECF No. 24.)

Evanston filed a declaratory judgment action in this court on September 21, 2012. (ECF No. 1.) The University Defendants and R&L answered the complaint for declaratory judgment on December 6, 2012. (ECF Nos. 8, 11.) On September 19, 2013, Evanston and the University Defendants filed respective Rule 56 motions. (ECF No. 28, 29.) The University Defendants filed opposition to Evanston's Rule 56 motion on September 27, 2013, to which Evanston filed opposition to the University Defendants' Rule 56 motion on October 7, 2013. (ECF Nos. 32, 35.) The University Defendants filed a reply in support of their Rule 56 motion on October 18, 2013. (ECF No. 37.)

On January 14, 2014, the court held a hearing on the pending motions. (ECF No. 46.)

## II. LEGAL STANDARD

A. <u>Declaratory Judgment Actions</u>

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 287 (1995) (quoting <u>Pub. Serv. Comm'n of Utah v. Wycoff Co.</u>, 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's

4

permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)).

B.      Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties'

differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

C.     General Principles of South Carolina Insurance Law

Under South Carolina law, insurance policies are subject to the general rules of contract construction. B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." Id. The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. Id. "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348 (S.C. 1976). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." Poston v. Nat'l Fid. Life Ins. Co., 399 S.E.2d 770, 772 (S.C. 1990).

An insurer's obligation under a policy of insurance is defined by the terms of the policy

6

itself and cannot be enlarged by judicial construction. S.C. Ins. Co. v. White, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. M&M Corp. of S.C. v. Auto–Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010); Owners Ins. Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." S.C. Farm Bureau Mut. Ins. Co. v. Wilson, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

"[E]xclusions in an insurance policy are always construed most strongly against the insurer." Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co., 663 S.E.2d 492, 495 (S.C. 2008) (internal citation omitted). However, even though "exclusions in a policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." S.C. Farm Bureau Mut. Ins. Co. v. Dawsey, 638 S.E.2d 103, 104 (S.C. Ct. App. 2006) (citing B.L.G. Enters., 514 S.E.2d at 330). Moreover, the "court should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." State Auto Prop. & Cas. Co. v. Brannon, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992).

D.     The Duty to Indemnify Under South Carolina Law

Under South Carolina law, a liability insurer's duty to indemnify is determined by the findings of the fact finder in the underlying case. Ellett Bros., Inc. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 388–89 (4th Cir. 2001) (citing Jourdan v. Boggs/Vaughn Contracting, Inc., 476 S.E.2d 708, 711 (S.C. Ct. App. 1996)). In other words, "[t]here is no obligation to defend until an action is brought and no obligation to indemnify until a judgment against the insured is

7

obtained." See Howard v. Allen, 176 S.E.2d 127, 129 (S.C. 1970).

### III.    ANALYSIS

A.    The Parties' Arguments

  *1. Evanston's Rule 56 Motion*

Evanston moves for summary judgment on the issue of whether it has any duty to indemnify the University Defendants, as R&L's assignees, for the cost to mitigate and repair the water damage at issue in the Underlying Lawsuit.  In its motion, Evanston alleges that it does not contest that there has been an "occurrence" causing "property damage." (ECF No. 28-1 at 2.) Instead, Evanston argues that it is entitled to summary judgment because the damage suffered by the University Defendants is unambiguously excluded from coverage by the water damage exclusion in the Contractor Limitation Endorsement of the Evanston Policy.[1]  (Id. (referencing ECF No. 1-2 at 19).)  In this regard, Evanston asserts that the University Defendants' damages are excludable under the water damage exclusion, because these damages unambiguously qualify as being caused by the "invasion or existence of water or moisture."  (Id. at 8.)  Specifically, Evanston asserts that the "'incoming" of the water [from a pressurized piping system] to the dry spaces constitutes an 'invasion' within the plain and ordinary meaning of the word as used in the

---

[1] As identified in the factual background section, paragraph I.3 of the Contractor Limitation Endorsement to the Evanston Policy provides in relevant part:

**CONTRACTOR LIMITATION ENDORSEMENT**

I.    The coverage under this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury;"
        * * *
   3. Caused by, arising out of, resulting from, or in any way related  to the invasion or existence of water or moisture including but not limited to mold, mildew, rot, or related deterioration of any property.

(ECF No. 1-2 at 19.)

water damage exclusion . . . [a]nd, . . ., without the 'existence' of that water in the dry areas of Claflin's James S. Thomas Science Building, Claflin would have suffered no injury." (Id. at 9.) Moreover, "the water damage exclusion does not require mold, rot, or deterioration of property, rather the exclusion cites these as examples of the 'property damage.'" (Id.)

In support of its arguments and assertions, Evanston relies on Charlton v. Evanston Ins. Co., 502 F. Supp. 2d 553 (W.D. Tex. 2007), wherein the District Court for the Western District of Texas observed in a footnote regarding a homeowner's claims for damages resulting from water intrusion that "the Court agrees with Evanston that there is no coverage because the Contractor Limitation Endorsement precludes coverage for "property damage" or any "loss or damage arising out of inadequate, improper, faulty or defective construction . . . caused by the existence of water or moisture." Id. at 561 n.4. Based on the entirety of the foregoing, Evanston asserts that Claflin's damages are excluded from coverage pursuant to the ordinary and plain meaning of the language found in the water damage exclusion. Accordingly, Evanston asserts it is entitled to summary judgment.

Evanston also moves for summary judgment on the issue of attorney's fees and costs. In its motion, Evanston argues that the only way the University Defendants should receive attorney's fees and costs is if they can show that they successfully defended or prevailed in this action. (Id. at 11-12.) As support for this argument, Evanston asserts that there is no evidence of bad faith on its part. Evanston asserts that the evidence shows that it has always taken the position that the cost to repair the damaged urinal valve was covered by the Evanston Policy. (Id.) Moreover, Evanston asserts that it properly undertook its obligation to provide R&L a defense up until R&L agreed to assign its rights under the Evanston Policy to Claflin, "at which point the need to defend R&L ceased because of the unanimity of interest between R&L and

9

Claflin in the Underlying Lawsuit." (Id.) Evanston further asserts that if the court finds that "the water exclusion in the Evanston Policy precludes coverage for the damage resulting from the severing of the urinal water supply valve in the third floor bathroom of the James S. Thomas Science Building, . . ." then Claflin, as R&L's assignee of rights under the Evanston policy, "cannot be said to have prevailed or successfully defend[][ed] this action and is not entitled to attorney's fees and costs as a matter of law." Therefore, if the foregoing finding is made by the court, Evanston contends it is entitled to summary judgment on the issue of attorney's fees and costs. (Id. at 12 (citing State Auto Prop. & Cas. Ins. Co. v. Raynolds, 592 S.E.2d 633 (S.C. 2004)).)

The University Defendants oppose Evanston's motion for summary judgment, asserting that the motion should be denied because the language in the water damage exclusion is ambiguous and should be construed against Evanston. (ECF No. 32 at 2.) In contrast to Evanston's argument that the words of the Evanston policy mean that all water damage is excluded from the policy, the University Defendants assert that these words could also mean that "only long-term, invasive water damage, like mold and the like, are excluded from the policy." (Id. at 3.) Accordingly, the University Defendants argue that their loss is not excluded as a result of the ambiguity in the water damage exclusion. (Id.)

Regarding Evanston's motion for summary judgment on attorney's fees, the University Defendants assert that the issue is not ripe for adjudication at this time. (Id. at 3.) Specifically, the University Defendants point out that they have not filed a motion for attorney's fees and would only file such a motion if they prevailed in this action. (Id. at 5.) Therefore, the University Defendants argue that the proper time for the court to address this issue is when a motion for attorney's fees is before the court. (Id.)

### 2. The University Defendants' Rule 56 Motion

The University Defendants filed a cross motion for summary judgment, seeking to have the court "order Evanston to pay $207,875.93, the amount of R&L's confession of judgment." (ECF No. 29-1 at 2.) In support of their motion, the University Defendants argue that their "property damage was not caused by any invasive or long-term water damage such as mold, mildew, or rot, as contemplated by the [water damage] exclusion in the [Evanston] policy." (Id. at 3.) The University Defendants further argue that their claim is different from the claim that was excluded under the same water damage exclusion by the United States District Court for the Southern District of Texas in Nautilus Ins. Co. v. Nevo Waterproofing, Inc., 2005 WL 6337767 (2005).[2] The University Defendants assert that in Nautilus, the Texas District Court found that the water damage exclusion was applicable because the property damage at issue was caused by an invasion or existence of water or moisture that arose out of defective construction. (Id. at 3 (citing ECF No. 39 (C/A No. H-04-2986) at 14).)  Unlike the claim in Nautilus, the University Defendants contend that their damages are not excludable pursuant to the water damage exclusion because (1) their water damage occurred instantaneously due to the broken water supply valve, by an occurrence covered by the Evanston Policy; (2) without the accident, the water would still be contained in the plumbing; and (3) the water damages here were not caused by defective construction. (Id.)  Finally, the University Defendants assert that because the water damage exclusion specifies "mold, mildew, rot, or related deterioration," the court should use the

---

[2] This citation does not exist on Westlaw.  Evanston noticed this observing that "Claflin does not provide the actual memorandum in which the Southern District of Texas makes this proclamation, and, therefore, we are without a clear understanding of the basis for the Court's ruling."  (ECF No. 35 at 4.)  However, the court reviewed the docket for the Southern District of Texas and determined that the University Defendants were citing to ECF No. 39 in Nautilus Ins. Co. v. Nevco Waterproofing, Inc., C/A No. H-04-2986 (S.D. Tex. July 23, 2004).

principle of ejusdem generis[3] to find that the water damage exclusion precludes "coverage only for long-term water damage." (Id. at 6.) Based on the foregoing, the University Defendants assert they are entitled to summary judgment.

The University Defendants also argue in support of their motion for summary judgment that the water damage exclusion has two (2) possible meanings and, therefore, the exclusion should be construed in a way that favors them. (Id. at 4.) Specifically, the University Defendants assert that the water damage exclusion can mean (1) all water damage is excluded from the Evanston Policy or (2) only long-term, invasive water damage, like mold, is excluded from the policy. (Id. (citing Nautilus).) Because of this ambiguity, the University Defendants contend the Evanston Policy should be construed in favor of coverage and construed against Evanston. (Id.)

Finally, the University Defendants argue that the purpose of the Evanston Policy was to insure against losses caused by accidents. (Id. at 5 (citing L-J, Inc. v. Bituminous Fire & Marine Ins. Co., 621 S.E.2d 33, 36 (S.C. 2005)).) In this regard, the University Defendants assert that R&L purchased the Evanston Policy "to insure against the exact type of accidental loss that occurred here." (Id.) The University Defendants further assert that the court should grant their motion for summary judgment because "it furthers the purpose for which CGL policies are obtained by insureds, which is to cover an accidental occurrence causing damage to another." (Id.)

---

[3] Ejusdem generis is a canon of statutory construction which means that when general words follow specific words in a statute, the general words are construed to embrace only objects similar to those embraced by the preceding specific words. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-115 (2001); United States v. Alpers, 338 U.S. 680, 683 (1950); Gooch v. United States, 297 U.S. 124, 128 (1936). Example: if a law refers to automobiles, trucks, tractors, motorcycles and other motor-powered vehicles, "vehicles" would not include airplanes, since the list was of land-based transportation. The Free Dictionary, http://legal-dictionary.thefreedictionary.com/Ejusdem+generis (last visited Jan. 13, 2014).

Evanston opposes the motion for summary judgment of the University Defendants, arguing that (1) Nautilus can only be read to stand for the proposition that "there is no coverage for water intrusion arising from construction defects within the verbiage or similar verbiage of the water exclusion"; and (2) the plain and ordinary meaning of the words in the water damage exclusion should not be limited to the types of damage suggested by the University Defendants. (ECF No. 35 at 5.)  In support of this argument, Evanston asserts that the water damage exclusion is not ambiguous in isolation or when considered in the context of the entire Evanston Policy.  (Id. at 6.)  In addition, Evanston asserts that the University Defendants incorrectly invoke the concept of ejusdem generis, because "there is no general language in the water exclusion that follows specific terms" and the phrase "including but not limited to" precedes the phrase "mold, mildew, rot, or related deterioration." (Id. at 7.)  In this regard, Evanston asserts that the University Defendants incorrectly cite to United States v. Alpers, 338 U.S. 680 (1950), as the United States Supreme Court noted that ejusdem generis "cannot be employed to render general words meaningless" and that is exactly what the University Defendants are asking this court to do.  (Id. at 8 (citing Alpers, 338 U.S. at 682).)  Finally, Evanston contends that there is no evidence in the record to support the University Defendants' claim that (1) the purpose of commercial general liability insurance is to cover losses due to all accidents; and (2) R&L expected for the Evanston Policy to cover this type of property damage.  (Id. at 8-9.)  As to (2) specifically, Evanston emphasizes that the "reasonable expectations" theory[4] of coverage does

---

[4] South Carolina has not adopted the doctrine of "reasonable expectations" in construing insurance policies.  Doe v. Nw. Mut. Life Ins. Co., C/A No. 2:10-2961-DCN, 2012 WL 2405510, at *6 (D.S.C. June 26, 2012).  The doctrine of reasonable expectations recognizes "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts . . . even though painstaking study of the policy provisions would have negated those expectations."  Id. (citing Allstate Ins. Co. v. Mangum, 383 S.E.2d 464, 467 (S.C. Ct. App. 1989)).  This rule "has never been accepted by the supreme court of this state." Id.

13

not exist in South Carolina insurance law and it should not be forgotten that the Evanston Policy covers many different kinds of property damage and bodily injury, it just does not cover the water damage at issue in this case.  (Id. at 9.)

In reply, the University Defendants argue that case law in this state and other states supports the finding that ejusdem generis is applicable to the language in the water damage exclusion because the doctrine applies whether the general term occurs before or after the specific language.  (ECF No, 37 at 2-3 (citing Quick v. Owens, 12 S.E.2d 837, 842 (S.C. 1941) (The Court further held that "[t]here is no question that general and unlimited terms are restrained and limited by particular recitals, when used in connection with them, whether they are found in the recital of a bond or covenant, or any other writing, or used in ordinary conversation, for the obvious reason that they convey a more definite idea, and are therefore less liable to misconception."); Henderson v. McMaster, 88 S.E.2d 645 (S.C. 1916) ("The rule in the construction of a statute is that general words – and it makes no difference how general – will be confined to the subject treated of."); Coleman vs. City of Oakland, 295 P. 59, 60 (D. Cal. 1930) ("The doctrine of 'ejusdem generis' simply means that where general and specific words relating to the same things are associated together they take color from each other, and the general words are restricted to a sense analogous to that of the less general.")).)  In this regard, the University Defendants argue that "there would be no reason to list any types of water damage excluded by the [Evanston] policy if the policy excluded all types of water damage."  (Id. at 3.)  They further argue that "[s]ince the specific words in the [water damage] exclusion are types of long-term water damage, the general term should exclude only long-term water damages, not damage occurring immediately after a tortious, negligent event . . . ."  (Id. at 4.)  As a result of the

---

(citing S. Land & Golf Co. v. Harleysville Mut. Ins. Co., C/A No. 03–2189, 2006 WL 2443340, at *3 (D.S.C. Aug. 22, 2006)).

foregoing, the University Defendants assert that their water damage should be covered by the Evanston Policy.

B.     The Court's Review

The question before the court is whether the Evanston Policy is clear and unambiguous regarding its exclusion of coverage for property damage to the James S. Thomas Science Building suffered by the University Defendants as alleged in their Underlying Lawsuit. In the Underlying Lawsuit, the University Defendants alleged that Evanston's "agents and/or servants dropped the partition section and caused it to fall against a urinal valve, resulting in the separation of the urinal valve from the water supply line and water flooding the bathroom, third floor, and spreading to the second and first floors of the building, causing extensive damage." (ECF No. 1-1 at 5 ¶ 6.) Under the plain and ordinary meaning of the Contractor Limitation Endorsement in the Evanston Policy, coverage does not apply for "property damage" "caused by, arising out of, resulting from, or in any way related to the invasion or existence of water or moisture." (ECF No. 1-2 at 19.)

Upon its review, the court considered the parties' arguments and finds that the plain meaning of the Contractor Limitation Endorsement unambiguously excludes from coverage the property damage at issue in the Underlying Lawsuit. More specifically, the court finds that the plain language of the Contractor Limitation Endorsement excludes all property damage caused by water and only identifies mold, mildew, and rot as examples of the types of property damage that are excluded. In this regard, the court finds that the Evanston Policy is not susceptible to more than one reasonable interpretation. Moreover, this finding is persuasively supported by the reasoning of the Western District of Texas, which court reviewed this specific Contractor Limitation Endorsement and reached a similar conclusion. See Charlton v. Evanston Ins. Co.,

15

502 F. Supp. 2d 553, 561 n.4 (W.D. Tex. 2007) (Further, as to Casey's claims regarding water damage, the Court agrees with Evanston that there is no coverage because the Contractor Limitation Endorsement precludes coverage for "property damage" . . . "caused by the existence of water or moisture."). Based on the foregoing, the court concludes that the Evanston Policy does not cover property damage caused by water at the James S. Thomas Science Building, and declares that Evanston owes no duty to indemnify the Underlying Defendants.

## IV.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the motion for summary judgment of Plaintiff Evanston Insurance Company and **DENIES** the motion for summary judgment of Defendants Claflin University and General Board of Higher Education and Ministry. (ECF Nos. 28, 29.) Accordingly, the court declares that commercial general liability insurance policy number CL100201331 does not provide coverage for the claims asserted in the Underlying Lawsuit. Plaintiff Evanston Insurance Company does not have to indemnify Defendants Claflin University and General Board of Higher Education and Ministry for property damage to the James S. Thomas Science Building.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

April 9, 2014
Columbia, South Carolina

16